1

2

3

4

5

6                  UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON
                            AT TACOMA
7

  THERMAPURE, INC.,
8
                                              CASE NO. C11-5958 BHS
                         Plaintiff,
9                                             ORDER RENOTING
  v.                                          DEFENDANT'S MOTION FOR
                                              SUMMARY JUDGMENT
10 WATER OUT OREGON, et al.,

11                       Defendants.

12

13        This matter comes before the Court on Defendant Water Out Oregon's ("WOO")

14 motion for partial summary judgment (Dkt. 17).  The Court has considered the pleadings

15 filed in support of and in opposition to the motion and the remainder of the file and

16 hereby renotes the motion for the reasons stated herein.

17                         **I. PROCEDURAL HISTORY**

18        On November 18, 2011, Plaintiff Thermapure, Inc. ("Thermapure"), filed a

19 complaint alleging that WOO and Defendant Water Out of Oregon, Inc., infringe United

20 States Patent No. 6,327,812 ("the '812 patent").  Dkt. 1.

21        On February 21, 2012, WOO filed a motion for partial summary judgment of non-

22 infringement.  Dkt. 17.  On May 7, 2012, Thermapure responded.  Dkt. 27.  On May 21,

1  2012, WOO replied (Dkt. 31) and filed a response to Thermapure's request for additional

2  time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) (Dkt. 34).

3                              **II. FACTUAL BACKGROUND**

4  **A.      Patented Technology**

5          On December 11, 2001, the United States Patent Office issued the '812 patent.

6  Dkt. 28, Declaration of Shaun Swiger ("Swiger Decl."), Exh. 1.  The patent is titled

7  "Method of Killing Organisms and Removal of Toxins in Enclosures" and contains eight

8  claims.  *Id*.  Thermapure asserts that the disclosed technology "is used in environmental

9  cleanup and pest eradication" and is "also used in structural drying of water damaged

10 buildings because it is effective in the removal of contaminants such as mold, microbes

11 and other harmful toxins, that develop in . . . water damaged structures."  Dkt. 27 at 4.

12 More specifically,

13          Structural drying involves the removal of water from structures and
           structural drying jobs are commonly referred to in the industry as "water
14         losses." There are 3 categories of water losses. Category 1 involves the
           release of potable water. In category 1 losses the water in the structure may
15         not be initially contaminated. However, if the water is permitted to be
           present for 72 hours mold will begin to develop. For this reason even
16         category 1 losses can involve the sanitization of the structure. Since water
           absorbs harmful microbes and other substances that may be present in a
17         structure, water itself can be considered a contaminant in a structure.
           Category 2 and 3 water losses, also known as "grey" and "black"
18         water losses, involve mold, microbes and other harmful contaminants. For
           example, category 3 "black" water losses involve the presence of sewage.
19         Based on my experience, which includes extensive field work and research
           and review of industry materials, I would estimate that over 80% of water
20         losses are category 2 or 3 losses. Thus, the vast majority of structural
           drying involves the sanitization of structures that have been exposed to
21         harmful contaminants.

22 Dkt. 30, Declaration of Jared Perez, ¶¶ 4–5.

ORDER - 2

1        Although the '812 patent contains eight claims, it is undisputed that the only claim

2    at issue is claim 6.  This claim provides as follows:

3            A method for sanitizing an enclosed structure having an exterior and
         an interior, comprising the steps of:
4                preparing said enclosed structure for exposure to a high temperature
         gas by removing or protecting all heat sensitive items;
5                disposing a plurality of temperature indicating probes at
         predetermined locations within said enclosed structure;
6                heating a gas to a predetermined temperature;
                directing said heated gas into said enclosed structure in order to raise
7        the temperature within said enclosed structure to said predetermined
         temperature;
8                monitoring the temperature detected from said probes in real time to
         ensure that all portions of said enclosed structure reach said predetermined
9        temperature;
                venting said heated gas from said enclosed structure; and
10               filtering said heated gas vented from said enclosed structure.

11    '812 patent, col. 6, ll. 5–23.

12   **B.    Prior Litigation**

13       In 2006, Thermapure filed an action against Water Out Drying Corp. in the United

14   States District Court for the Eastern District of Texas.  Swiger Decl., Exh. 2.  After trial,

15   the jury returned a verdict form finding that the '812 patent was not invalid and that

16   Water Out Drying Corp. induced infringement of the '812 patent.  *Id*., Exh. 3.  The jury,

17   however, was unable to agree on an amount of damages.  *Id*.  Therefore, on December

18   11, 2009, the Honorable Charles Everingham, IV, United States Magistrate Judge, issued

19   an order of partial judgment providing, in part, as follows:  "it is ORDERED,

20   ADJUDGED, AND DECREED that the defendant, Water Out, induced infringement of

21   claim 6 of the '812 patent, and that claim 6 of the '812 patent is not invalid."  *Id*., Exh. 4.

22

1   **C.      Equipment**

2          In November 2008, WOO purchased Water Out equipment.  However, Felix

3   Herrada, the owner of WOO, declares that WOO has never used the equipment as it was

4   intended to be used.  For example, he states that he could not load the data logging

5   program into the onboard computer and "simply discarded the data logging equipment."

6   Dkt. 18, Declaration of Felix Herrada, ¶¶ 7–11.

7                                **III. DISCUSSION**

8   **A.      Summary Judgment Standard**

9          Summary judgment is proper only if the pleadings, the discovery and disclosure

10  materials on file, and any affidavits show that there is no genuine issue as to any material

11  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

12  The moving party is entitled to judgment as a matter of law when the nonmoving party

13  fails to make a sufficient showing on an essential element of a claim in the case on which

14  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

16  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

17  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

18  present specific, significant probative evidence, not simply "some metaphysical doubt").

19         If a nonmovant shows by affidavit or declaration that, for specified reasons, it

20  cannot present facts essential to justify its opposition, the court may defer considering the

21  motion, deny the motion, or allow time to obtain affidavits or declarations or to take

22  discovery.  Fed. R. Civ. P. 56(d).

1   With regard to the merits of this particular case, determining non-infringement

2   involves two steps: (1) construing the patent claims to determine their meaning and legal

3   effect and (2) determining whether the accused product infringes the properly construed

4   claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). The Court

5   construes claims as a matter of law; determining infringement is a question of fact. *Id*.

6   **B.    WOO's Motion**

7   This motion is about WOO's actual use of the Water Out equipment. Thermapure

8   has failed to submit admissible evidence of one actual infringing use of the equipment.

9   Instead, Thermapure relies on instruction manuals, hypothetical interpretations of

10  WOO's invoices, and, tort professors' favorite doctrine, *res ipsa loquitur* – WOO uses

11  the equipment therefore it must be infringing. Although the Court is inclined to grant the

12  motion for summary judgment, experience counsels toward eliminating any possible

13  factual confusion that may be presented to the Federal Circuit. For example, Thermapure

14  states that it has not had the opportunity to inspect all of WOO's equipment. Dkt. 27 at

15  15. Therefore, the Court will grant Thermapure's 56(d) request and defer ruling on the

16  motion for summary judgment.

17  Thermapure may conduct additional discovery with the goal of obtaining

18  admissible evidence of at least one actual infringing use. To this end, Thermapure

19  requests an order from the Court instructing WOO "to permit an inspection of all

20  equipment it has used in structural drying." Dkt. 27 at 15. The Court is not convinced

21  that a discovery order is necessary as it is in WOO's best interest to avoid litigation

22  through transparency. If the Court's assumption is incorrect on this issue, Thermapure

1  may seek Court intervention.  Based on the record, the Court finds that ninety days

2  should be sufficient time to conduct the additional discovery.

3  ## IV. ORDER

4      Therefore, it is hereby

5      **ORDERED** that WOO's motion for summary judgment (Dkt. 17) is **RENOTED**

6  for consideration on the Court's October 26, 2012 calendar.  Thermapure may file a

7  supplemental response no later than October 22, 2012.  WOO may file a supplemental

8  reply no later than October 26, 2012.

9      Dated this 26th day of July, 2012.

10

11

                    _____

12                      BENJAMIN H. SETTLE
                    United States District Judge

13

14

15

16

17

18

19

20

21

22