UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THERMAPURE, INC.,

                              Plaintiff,

v.

WATER OUT OREGON, et al.,

                              Defendants.

CASE NO. C11-5958 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Water Out Oregon's ("WOO")

motion for partial summary judgment (Dkt. 17).  The Court has considered the pleadings

filed in support of and in opposition to the motion and the remainder of the file and

hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 18, 2011, Plaintiff Thermapure, Inc. ("Thermapure"), filed a

complaint alleging that WOO and Defendant Water Out of Oregon, Inc., infringe United

States Patent No. 6,327,812 ("the '812 patent").  Dkt. 1.

On February 21, 2012, WOO filed a motion for partial summary judgment of non-

infringement.  Dkt. 17.  On May 7, 2012, Thermapure responded.  Dkt. 27.  On May 21,

1    2012, WOO replied (Dkt. 31) and filed a response to Thermapure's request for additional

2    time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) (Dkt. 34).  On July 26, 2012,

3    the Court granted Thermapure's request and renoted WOO's motion to October 26, 2012.

4    Dkt. 38.  On October 22, 2012, Thermapure filed a supplemental response.  Dkt. 39.  On

5    October 29, 2012, WOO filed a supplemental reply.  Dkt. 49.

## II. FACTUAL BACKGROUND

**A.    Patented Technology**

On December 11, 2001, the United States Patent Office issued the '812 patent.
Dkt. 28, Declaration of Shaun Swiger ("Swiger Decl."), Exh. 1.  The patent is titled
"Method of Killing Organisms and Removal of Toxins in Enclosures" and contains eight
claims.  *Id*.  Thermapure asserts that the disclosed technology "is used in environmental
cleanup and pest eradication" and is "also used in structural drying of water damaged
buildings because it is effective in the removal of contaminants such as mold, microbes
and other harmful toxins, that develop in . . . water damaged structures."  Dkt. 27 at 4.
More specifically,

> Structural drying involves the removal of water from structures and
> structural drying jobs are commonly referred to in the industry as "water
> losses." There are 3 categories of water losses. Category 1 involves the
> release of potable water. In category 1 losses the water in the structure may
> not be initially contaminated. However, if the water is permitted to be
> present for 72 hours mold will begin to develop. For this reason even
> category 1 losses can involve the sanitization of the structure. Since water
> absorbs harmful microbes and other substances that may be present in a
> structure, water itself can be considered a contaminant in a structure.
>     Category 2 and 3 water losses, also known as "grey" and "black"
> water losses, involve mold, microbes and other harmful contaminants. For
> example, category 3 "black" water losses involve the presence of sewage.
> Based on my experience, which includes extensive field work and research

and review of industry materials, I would estimate that over 80% of water losses are category 2 or 3 losses. Thus, the vast majority of structural drying involves the sanitization of structures that have been exposed to harmful contaminants.

Dkt. 30, Declaration of Jared Perez, ¶¶ 4–5.

In its previous order, the Court stated that "[a]lthough the '812 patent contains eight claims, it is undisputed that the only claim at issue is claim 6." Dkt. 38 at 3. In its supplemental response, Thermapure clarified that claim 6 was used as an example and that it has not conceded non-infringement of claim 4 or claim 8. Dkt. 39 at 5. Instead, Thermapure states that WOO's "motion is limited to the following claim terms: (1) use of a plurality of temperature monitoring probes; (2) predetermination of locations to place the probes; and, (3) predetermination of the temperature to heat a structure." *Id*. WOO's motion, however, explicitly challenges

(1) use of multiple temperature probes; (2) distribution of multiple temperature probes at pre-determined points throughout the structure; and (3) pre-determining a temperature for a target organism and heating the structure to that temperature.

Dkt. 17 at 2. This distinction is important because WOO's supplemental reply focuses on pre-determining a temperature for a target organism. *See* Dkt. 49.

**B.    Prior Litigation**

In 2006, Thermapure filed an action against Water Out Drying Corp. in the United States District Court for the Eastern District of Texas. Swiger Decl., Exh. 2. After trial, the jury returned a verdict form finding that the '812 patent was not invalid and that Water Out Drying Corp. induced infringement of the '812 patent. *Id*., Exh. 3. The jury, however, was unable to agree on an amount of damages. *Id*. Therefore, on December

1    11, 2009, the Honorable Charles Everingham, IV, United States Magistrate Judge, issued

2    an order of partial judgment providing, in part, as follows:  "it is ORDERED,

3    ADJUDGED, AND DECREED that the defendant, Water Out, induced infringement of

4    claim 6 of the '812 patent, and that claim 6 of the '812 patent is not invalid."  *Id.*, Exh. 4.

5    **C.    Concurrent Litigation**

6          Thermapure is pursuing an action in the United States District Court for the

7    Eastern District of Illinois that involves the '812 patent.  Dkt. 48, Declaration of Joel B.

8    Ard ("Ard Decl."), ¶ 2.  On July 3, 2012, United States District Judge Judge Joan H.

9    Lefkow issued an order construing claim terms of the '812 patent.  *Id.*, Exh. A ("Lefkow

10   Order").  Judge Lefkow interpreted terms relevant to the instant dispute as follows:

| Term | Construction |
|------|--------------|
| "Means for heating an environmentally acceptable gas to a predetermined temperature that is lethal to predetermined organisms"; "heating a gas to a predetermined temperature"; "a heater coupled to said gas source to heat said gas to a predetermined temperature . . ."; "preparing said enclosed structure for exposure to a high temperature gas by removing or protecting all heat sensitive items" | a temperature selected in advance that is sufficient to kill substantially all of the targeted organisms    gas that has been heated to a temperature sufficient to promptly kill targeted organisms |

18   *Id*. at 6.

19   **D.    Equipment**

20         In November 2008, WOO purchased Water Out equipment.  However, Felix

21   Herrada, the owner of WOO, declares that WOO has never used the equipment as it was

22   intended to be used.  For example, he states that he could not load the data logging

1   program into the onboard computer and "simply discarded the data logging equipment."

2   Dkt. 18, Declaration of Felix Herrada, ¶¶ 7–11.

3                                **III. DISCUSSION**

4   **A.      Summary Judgment Standard**

5           Summary judgment is proper only if the pleadings, the discovery and disclosure

6   materials on file, and any affidavits show that there is no genuine issue as to any material

7   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

8   The moving party is entitled to judgment as a matter of law when the nonmoving party

9   fails to make a sufficient showing on an essential element of a claim in the case on which

10  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

11  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

12  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

13  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

14  present specific, significant probative evidence, not simply "some metaphysical doubt").

15  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

16  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

17  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

18  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

19  626, 630 (9th Cir. 1987).

20          The determination of the existence of a material fact is often a close question. The

21  Court must consider the substantive evidentiary burden that the nonmoving party must

22  meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

1   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

2   issues of controversy in favor of the nonmoving party only when the facts specifically

3   attested by that party contradict facts specifically attested by the moving party.  The

4   nonmoving party may not merely state that it will discredit the moving party's evidence

5   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

6   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

7   nonspecific statements in affidavits are not sufficient, and missing facts will not be

8   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

9           Where no factual showing is made in opposition to a motion for summary

10  judgment, the District Court is not required to search the record *sua sponte* for some

11  genuine issue of material fact.  *See Carmen v. San Francisco Unified School Dist.*, 237

12  F.3d 1026, 1029 (9th Cir. 2001).  Basically, "[i]t is not our task, or that of the district

13  court, to scour the record in search of a genuine issue of triable fact. We rely on the

14  nonmoving party to identify with reasonable particularity the evidence that precludes

15  summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

16  **B.     WOO's Motion**

17          With regard to the merits of this particular case, determining non-infringement

18  involves two steps: (1) construing the patent claims to determine their meaning and legal

19  effect and (2) determining whether the accused product infringes the properly construed

20  claims.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  The Court

21  construes claims as a matter of law; determining infringement is a question of fact.  *Id.*

22

1       **1.      Claim Construction**

2            Although Thermapure provides a considerable amount of case law on the issue of

3   claim construction, it fails to address Judge Lefkow's claim construction order.  *See* Dkt.

4   39 at 11–20.  On the issue of adopting another district court's claim construction, Judge

5   Robert Lasnik of this Court recently reasoned as follows:

6             In *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390
         (1996), the Supreme Court allocated all issues related to claim construction
7         to the courts, in part as a means of promoting national uniformity in the
         treatment of a given patent. The Court recognized that only a Federal
8         Circuit construction of a term in the context of a particular patent would
         achieve the desired result, but it apparently intended that other federal
9         courts would afford some sort of deference to other lower court decisions in
         the interim. *Markman*, 517 U.S. at 391 (the doctrine of stare decisis "will
10        promote (though it will not guarantee) intrajurisdictional certainty . . . on
        those questions not yet subject to interjurisdictional uniformity under the
11        authority of the single appeals court.").

12   Ard Decl., Exh. B at 5 (Order Construing Claims in *Avocent Redmond Corp. v. Rose*

13   *Electronics et al.*, No. C06-1711RSL (W.D. Wash., Feb. 6. 2012)).  The Court agrees

14   that deference must be afforded to other district court constructions. Upon review of

15   Judge Lefkow's order, the Court finds the relevant construction thoughtful and well-

16   reasoned.  Therefore, the Court adopts Judge Lefkow's constructions.

17             In the order, Judge Leftkow construed "predetermined temperature" and "high

18   temperature gas" to mean "a temperature selected in advance that is sufficient to kill

19   substantially all of the targeted organisms" and "gas that has been heated to a temperature

20   sufficient to promptly kill targeted organisms."  Lefkow Order at 6.  Judge Lefkow

21   explained that "the measure of temperature must be sufficient to kill almost all targeted

22

1  organisms (implicitly promptly) by using the method claimed. Otherwise, a practitioner

2  of the invention would have no guidance as to temperature required." *Id.*

3  **2.    Infringement**

4      In this case, Thermapure must produce evidence that establishes a question of fact

5  on every element of its claim of infringement.  With regard to literal infringement,

6  Thermapure must provide evidence that "the accused device infringes if it incorporates

7  every limitation of a claim, either literally or under the doctrine of equivalents." *Nazomi*

8  *Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1732 (Fed. Cir. 2005) (emphasis

9  added).

10      WOO focuses on the "targeted organism" limitation and argues that "accepting all

11  of [Thermapure's] facts as true solely for purposes of the pending Motion, there is no

12  evidence – zero, none – that Water Out ever 'identifies organisms to target with heat.'"

13  Dkt. 49 at 5.  The Court agrees.  Thermapure not only fails to address the "targeted

14  organism" limitation in its response (*see* Dkt. 27 at 9–14) and supplemental response

15  (Dkt. 39 at 16–21) but also fails to direct the Court's attention to "sufficient evidence

16  supporting the claimed factual dispute . . . ." *Anderson*, 477 U.S. at 253.  Missing facts

17  will not be presumed (*Lujan*, 497 U.S. at 888–89), and it is not the Court's task to "scour

18  the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279.

19  Moreover, the Court granted Thermapure a Rule 56(f) extension to "conduct additional

20  discovery with the goal of obtaining admissible evidence of at least one actual infringing

21  use." Dkt. 38 at 5.  The Court finds that Thermapure has been afforded sufficient time

22  and opportunity to meet its burden, but has failed.  Therefore, the Court grants WOO's

1  motion for summary judgment because Thermapure has failed to show that a material

2  issue of fact exists for trial on every element of its infringement claim.

3         The Court notes that WOO's motion was filed as a "partial" motion for summary

4  judgment, yet infringement of the '812 patent is Thermapure's only claim and WOO

5  requests the Court to "summarily rule that [WOO's] process does not infringe the

6  Patent." Dkt. 17 at 6.  Therefore, the Court requests a joint status report on the issues of

7  whether judgment should be entered and the case should be closed.

8                                    **IV. ORDER**

9         Therefore, it is hereby **ORDERED** that WOO's motion for summary judgment

10  (Dkt. 17) is **GRANTED.**  The parties shall file a joint status report no later than

11  December 1, 2012.

12         Dated this 13th day of November, 2012.

13

14

15                                    BENJAMIN H. SETTLE
                                      United States District Judge

16

17

18

19

20

21

22

ORDER - 9